# Rosa Hapavy, alias Rosalia Agapy, v. City of Chicago.

## Gen. No. 13,215.

1. VERDICT—*when not disturbed as against the evidence.* The opportunities of seeing the witnesses and hearing their testimony are denied to the Appellate Court and unless that court is able to say from the testimony in the record that the conclusions reached by the jury are not warranted by the proof, or that the verdict is clearly contrary to the weight of the evidence or the result of passion and prejudice, a verdict will not be disturbed.

2. INSTRUCTION—*what proper in action for injury sustained upon alleged defective street.* An instruction is proper which leaves it to the jury to say whether the defect in question was of such a nature that the city, in the exercise of ordinary care, could have discovered the defect in time to repair it before the injury to the plaintiff.

Action in case for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. HOMER ABBOTT, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed April 18, 1907.

CHARLES L. MAHONEY, for appellant.

FRANK D. AYERS, for appellee; EDWARD C. FITCH and ROBERT S. COOK, of counsel.

MR. JUSTICE HOLDOM delivered the opinion of the court.

Appellant brought her suit to recover damages from the city of Chicago for personal injuries which she claims to have suffered as the result of an accident which befell her on September 13, 1901, at the crossing of Canal street and Twenty-third place, in consequence of what is known as an "apron" covering the gutter between the curb and the street crossing being rotten and unsafe, so that when appellant stepped upon it it broke and her left foot went through it and she fell, striking herself in such a manner as to injure her left arm, shoulder and head. The injury to her head resulted, it is claimed, in the impairment of the sight of her left eye to such an extent as nearly to destroy it.

Hapavy v. City of Chicago.

A trial before the court and jury terminated in a verdict and judgment for appellee. The customary objections were made and exceptions preserved to the refusal of the court to grant a new trial and in entering judgment upon the verdict.

Appellant urges in argument two points which, it is contended, constitute such error as to demand a reversal of the judgment of the trial court: First, that the verdict is contrary to the evidence; and, second, that the trial court erred in giving to the jury the first and third instructions.

The record discloses a very serious conflict in the evidence. Statements are found so diametrically opposed to each other as to be irreconcilable. In this condition of the evidence much reliance must necessarily be placed in the solution of such conflicts by the jury. They had the better opportunity, both by their experience in the varied walks of life from which they were taken as triers of the fact, and from having seen and heard the several witnesses when they gave their testimony, observing their manner of testifying and their apparent intelligence or the lack of it, their feeling, bias or interest, if such was apparent from their testimony. These opportunities are denied us, and unless we are able to see from the testimony that the conclusions reached by the jury are not warranted by the proof, or that the verdict is clearly contrary to the weight of the evidence, or the result of passion and prejudice, under the well-settled law of this State we are not at liberty to disturb the jury's finding. Demmer v. Am. Ins. Co., 110 Ill. App., 580; T. W. & W. Ry. Co. v. Moore, 77 Ill., 217; Wiggins Ferry Co. v. Higgins, 72 Ill., 517; City of Rock Island v. Dies, 38 Ill. App., 409.

In this opinion we shall not recite all the evidence or what it tends to prove, but shall content ourselves by adverting to some of the more pertinent facts which appear to us to be of controlling force.

Two fundamental facts are necessary to be established before appellant can recover, viz: That appellant was in the exercise of due and ordinary care for her own safety when

the accident happened, and that the city was guilty of the negligence charged in the declaration. The negligence attributable to the city arises from proof of the fact of actual knowledge of the unsafe condition of the place where the accident occurred, or that at the time of its occurrence the defect, which was the primary cause of the accident, was of sufficiently long duration to charge the city with notice of its existence, and as there is no fixed time in law which will operate to charge the city with notice, it is for the jury to say, as a question of fact to be gathered from all the environing conditions and the place where the defect was, as to what is a sufficient time to charge the city with notice. Underlying these questions is the primarily important one— Does the evidence sustain the allegation that the accident to appellant happened at the time and place charged?

As to the happening of the accident, appellant is substantiated by the testimony of one witness, Louis D. Maxconnell. Appellant testifies that on her way to a fish market at Canal and Twelfth streets, while walking north on Canal street, and when at the corner of Twenty-third place, her left foot broke through the walk and went down just under the knee. She says she does not remember how she fell. All she remembers is being taken home in an unconscious condition, and the first thing she knew she was at the door of Maxconnell's paint shop. She does not testify to seeing Maxconnell at the time she fell. She knew the place of the accident very well, as she says she had walked along there daily for sixteen years. While she testifies to injuries, she does not swear that any doctor attended her following the accident, or that she had any medical attention, at the time, for her injuries, and no doctor was put upon the witness stand who treated her for the injuries which she claims to have suffered as the result of her fall through the alleged defective walk. Neither does appellant evidence her knowledge of the condition of the walk, at the time she says she broke through it, by her evidence in chief, although on cross-examination she said she saw what she was walking on, and when she walked on the "apron" it seemed

good to her—didn't think it would break through, or would have been careful.

Maxconnell testified that he knew appellant prior to the accident, and had seen her often, and that she was a healthy woman. After testifying that he had seen the "apron" where appellant claims to have fallen, prior to her fall, he stated that he noticed it was loose in June or July prior to the time of appellant's fall; that he put the loose boards in place several times, but did not nail them. He then testified to seeing men working making repairs to sidewalks in the vicinity of the accident, and that he notified them, in the belief that they were city employees, of the defective condition of the "apron" and requested them to repair it. This testimony was subsequently stricken from the record on motion of appellant. (R. pp. 40 and 41.) This witness also testified that he had seen appellant walk over the place where she claims to have fallen once a week during the time the boards were loose in the "apron," and then on being interrogated by counsel for the city as to whether he had any interest in the result of the suit, he answered he had not, and that he had never endeavored to procure a contract from appellant for any monetary interest in the suit. He then, on further cross-examination, admitted that on March 2, 1906, he wrote appellant a letter which contained the following passages:

"Mrs. Agapy I am your witness against the city in case 11171. I write you this evening and want to know if you sent any well dressed gentleman to see me concerning your case and wanting me to sign an agreement. * * * I want to know if you sent any well dressed man who wanted me to sign an agreement to be with him when the case was called for trial. He wanted to know if you had made any promise to pay me to be your witness. I at once asked who he was, but he would not tell me, but wanted to know how much I would take to be on his side when I was called on, or if I thought the matter over. * * * I said I was entitled to 25 cents on the dollar for each one dollar on my side of the case. * * * He says this paper for me to

sign offered to pay more if necessary and by that I said I would wait until I heard from you and see if you knew anything about this man. I think that is about right and fair if you will pay me twenty-five cents out of each dollar and if you lose you pay me two dollars for each visit and my witness fees. Now we can sign an agreement to that effect and I will prove as to what I am saying. * * * If you are satisfied you may sign this contract and you may feel assured that I am out for all the money there is in it, and I don't do anything in the dark. I can tell you how easily things come if you all agree right, and so we understand each other." (R. pp. 37, 38 and 39.)

There is some testimony that the boards in the "apron" were rotten underneath, but appellant's witness, Edward Donnelly, testifies that to a person walking north no danger was apparent.

There is much medical testimony in the record, the major portion of which concerns expert knowledge as to whether a blow upon the head of the nature of the one claimed to have been suffered by appellant, would cause a cataract to form in the eye, such as appellant claimed to be affected with at the time of the trial. This testimony is unimportant in the view we take of the evidence as to the happening of the accident itself, or the negligence claimed to be attributable to the city from the defective condition of the "apron" through which appellant claims to have fallen. Dr. Samuel L. Mc-Creight was examined to support the contention of appellant, and Dr. Brown Pusey and Dr. Stephen W. Cox testified on the part of the city that the cataract in the eye of appellant was not attributable or traceable to a blow on her head. If this testimony was important to our decision, we would be constrained to hold, after a careful examination of the evidence of all the three medical experts, that appellant obviously failed in substantiating her contention that the cataract in her eye was caused by a blow upon her head received in the manner she relates in her evidence.

In this condition of the evidence it is obvious the whole of plaintiff's claim was discredited. A more venal, con-

scienceless witness than Maxconnell is rarely disclosed. His utter unworthiness is not a matter for debate. It is founded in a written confession, verified by his oath taken as a witness in the cause. His veracity is impeached out of his own mouth. He is unworthy of belief. The only useful purpose served by Maxconnell's testimony is to accentuate the improbability of appellant's evidence as to the happening of the accident as detailed by her, as well as the injuries from which she claimed to have suffered as the result of it. The jury undoubtedly viewed the evidence in this light, for we are unable to discover how they could have arrived at a conclusion other than they did upon this glaringly unreliable testimony.

From the admissions of Maxconnell it is fairly inferable that his testimony was bought with a price—25 per cent of the amount to be recovered. He had agreed to this after tampering with both sides. He was seemingly willing to barter his testimony to whichever side of the cause would bid the highest and prostitute his seared conscience where the price was most alluring. No spark of moral fire is discernible in his iniquitous compact. Testimony so influenced will never be permitted to serve as a factor to sustain a judgment or profane the fair page of a record in the temple of justice. We are in full accord with the finding of the jury on the evidence found in this record.

We have examined the first and third instructions about which appellant complains. It is conceded in argument by appellant that the first instruction contains a correct statement of law, but it is urged that the facts in evidence made it inapplicable. To this contention we are unable to yield our assent. It not only stated the law correctly, but is an instruction of so general a nature as to be applicable to nearly every claim for an injury resulting from a defective sidewalk. It states the care necessary to be exercised on the part of appellant to entitle her to recover, and the duty of the city to maintain the walk in an ordinarily safe condition for a person using ordinary care in passing over it, and

also states what constitutes constructive notice of the city as distinguishable from actual notice.

The third instruction is claimed to be objectionable under the ruling in City of Joliet v. McCraney, 49 Ill. App., 383. This contention rests clearly on a misapprehension of the ruling in the McCraney case *supra*. There the court instructed the jury "that if the city had no actual notice of the defects in the sidewalk, and that it was in such a condition that it appeared to be safe and free from defect to those who had occasion frequently to pass over it, then the city would be excused." This, the court say, "does not announce the proper rule. It was the duty of the city to use reasonable care and caution in discovering defects in the sidewalk and to repair them." The infirmity pointed out in the Mc-Craney case is absent here. The question as to whether the defect in the "apron" was latent or patent was squarely presented to the jury by the third instruction, and in either case it was left to the jury to say whether the defect was of such a nature that the city, in the exercise of ordinary care and diligence, could have discovered the defect in time to repair it before appellant's left leg broke through it on September 13, 1901. The question of latent or patent defect in the "apron" was brought out in the evidence of appellant's witness, Donnelly, who stated that going north in the direction in which appellant claims to have been traveling at the time of the accident, nothing wrong was apparent, but that in traveling in a contrary direction its unsafe condition was evident. There is other testimony in this record to like effect. The instruction in which this phase of the case is embodied is free from the criticism made by appellant, and contains a correct statement of the law.

The whole record considered, justice appears to have prevailed and the record is free from reversible error, and the judgment of the Circuit Court must be and is affirmed.

*Affirmed.*